The KINSMAN TRANSIT COMPANY, as Owner of THE Steamer PHILIP MINCH, etc.,

v.

UNITED STATES STEEL CORPORATION, PITTSBURGH STEAMSHIP DIVISION, as Owner of THE Steamer GEORGE G. CRAWFORD.

No. 3559.

United States District Court
N. D. Ohio, E. D.

March 21, 1956.

McCreary, Hinslea & Ray, Cleveland, Ohio, for libelant.

Arter, Hadden, Wykoff & VanDuzer, Cleveland, Ohio, for respondent.

JONES, Chief Judge.

In a calm sea, with little wind, and visibility of approximately five miles, around midnight of November 12–13, 1952, both the Minch and the Crawford knew they were converging on a busy traffic intersection approximately a mile to a mile and a half south of Southeast Shoal Light in Lake Erie. The Minch was bound from Sandusky to Toledo with a partial cargo of coal; the Crawford, without cargo, from Cleveland bound up the Lakes to Two Harbors.

From first view, about four or five miles away, they never were out of sight of each other up to the collision and there were no other ships as factors in their navigation.

Besides the extent of the visibility, one other thing appears to be in substantial agreement between the ships, and that is the point at which the collision occurred, approximately a mile and a half directly south of Southeast Shoal Light. I must say that it seems to me

that the testimony of the Crawford was more definite, coherent and reasonable than that of the Minch. The navigators of the Minch did not impress me with clarity in their recollections and recital of the evidence leading up to the collision as did the navigators of the Crawford.

The matter of expecting members of ships' crews to recall and testify to minutes and miles, and relying precisely upon their appraisal, makes too little allowance for the frailties of human beings to judge of those matters, and particularly is this so in the night season and in the presence of danger and disaster. The dispute as to the precise time of the collision is not, as I see it, so important,—it is the position and navigation of the ships that controls influential consideration in determining fault. I shall not undertake to reconcile disputes of fact of no material value to a finding of fault.

These were moving ships, with plenty of room for navigation and no other traffic presented a hindrance to either one—it was, therefore, nothing but faulty navigation that brought about the collision;—no other factor directly contributed to it. The Minch had a keel length of about 480 feet, the Crawford 585 feet. With cargo the Minch had a speed of about one mile per hour less than the Crawford light, which latter was about 12.45 miles per hour.

About three and a half miles south of Southeast Shoal Light the Minch, which had been proceeding from Sandusky on a 27 degree course, changed to 357 degrees and steered directly on the Southeast Shoal Light. The Crawford had proceeded from Cleveland to within about a mile and four-tenths off Southeast Shoal Light on a 298 degree course, when it changed to 307 degrees. At about the time and point of the Crawford's change from 298 to 307, it was testified by the captain, that he gave the one blast passing signal, which was promptly answered with one blast by the Minch. At about this time, or shortly thereafter, it was in evidence that the Minch reduced its speed and altered its course somewhat to the left. This, it is claimed by the respondent, was an indication that the Minch recognized that the Crawford was the favored ship and that it intended to keep out of its way. For this reason, it was contended by the respondent, the captain of the Crawford had the right to continue his course and speed, which he did until collision was imminent, when he turned his rudder hard to starboard in an attempt to avoid the collision. The evidence of the Minch was that its rudder was turned hard to port and its engines put hard astern. All of these last minute maneuvers were of no avail and the collision occurred. The reduced speed and change of course to a hard left by the Minch were too late, as was the danger signal and reversal of engines.

It is the testimony of the captain of the Crawford that except for the course change from 298 to 307 about a mile and four-tenths south of the Southeast Shoal Light, there was no further change in course until the collision was imminent, and no reduction of speed until after the collision.

It is my opinion that under the most reasonable view of the evidence a crossing situation was presented to these vessels, not altered by the nine degree change of the Crawford to starboard at about the time of the passing signal; and it is further my view that the Minch's danger signals, given seconds before the collision, were too late to be effective for a ship that should have given way to the favored ship. With the Minch on a course of 357 degrees and the Crawford on a course of 298 degrees, a spread of about 60 degrees, there was no sound reason why the navigators of the Minch should have construed the whistle of the Crawford as a passing signal by an over-taking vessel. The Minch, on that course if continued, would have fetched up on the Southeast Shoal since, under its evidence, it was heading dead-on the Southeast Shoal Light. Any overtaking vessel never would have reached a parallel course for passing in that situation. I find the Minch at fault, directly causing the collision.

While the favored ship in a crossing situation is, under the rules to hold its course and speed, yet, it seems to me, that continuing on a course and speed when it becomes apparent that the other ship is not fulfilling its obligation to signals and required navigation, is not consistent with good or safe navigation.

In the pilot house of the Crawford was the captain, the second mate and a wheelsman. The evidence is that they all saw the Minch coming up and at a distance of at least a mile it must have been apparent and realized that a collision was inevitable unless one or the other of the ships gave way. United States v. Erie R. Co., 6 Cir., 172 F. 50.

■ It was the duty of each ship to respond to the signal exchange and to navigate their respective ships in accordance with the rules applicable to the situation presented, and each ship had the right to assume that the other would follow out the signals and rules; nevertheless, when it became apparent that one or the other was not properly responding it becomes the duty of the other to take some precaution or action such as checking its speed or changing its course when first it became obvious that a collision must occur if the ships continued on their courses and speeds. Postal Steamship Corp. v. El Isleo, 308 U.S. 378, 60 S.Ct. 332, 84 L.Ed. 335.

■ Since Captain Radike of the Crawford frankly testified that he did not expect the Minch to pass under the Crawford's stern, I do not quite understand, in view of what was obvious to him, how he could have assumed that the Minch was going to change its course sharply to the left for Pelee Passage, and allow the Crawford a parallel passing, or otherwise keep out of his way. Such an assumption would have been unjustified under the facts and inconsistent with the respondent's claim that a crossing situation was presented. In any event, it was to have been a starboard passing as to the Minch whether crossing or parallel, and, as I think, under the evidence the Crawford had ample time to realize that the Minch was not effectively responding to either situation. Considering what Captain Radike knew and could see, he should have reduced his speed and adopted some further precautions to avoid a collision which he then must have known would otherwise occur. His failure to do so directly contributed to the collision and consequent damages.

I can reach no other finding and conclusion than that both vessels were at fault and divide the damages.

Findings of fact and conclusions of law may be presented for approval and adoption in accordance with Admiralty Rules, Rule 46½ and Note 1610 thereunder, 28 U.S. Code.